IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| DAVID J. LEFFLER and JAMES H. "HUNTER" LEFFLER, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| YAMAHA MOTOR FINANCE CORPORATION, USA, | ) ) ) |
| Defendant. | ) ) |

CIVIL ACTION FILE NO.

_____

## **COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 8, Plaintiffs David J. Leffler and James H. "Hunter" Leffler respectfully show the Court the following:

### Parties, Jurisdiction and Venue

1.      Plaintiffs David Leffler and Hunter Leffler are individuals and "consumers" under 15 U.S.C. § 1681a(c).  David Leffler is Hunter Leffler's father.

2.      Defendant Yamaha Motor Finance Corporation, USA ("Yamaha Finance") is a Delaware corporation that is authorized to transact business in the State of Georgia.   Yamaha Finance is subject to the jurisdiction of this Court and may be served with process by serving its registered agent, CSC of Stephens County, Inc., at 597 Big A Road, Toccoa, Georgia 30577.

3.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims asserted in this civil action arise under the laws of the United States, specifically 15 U.S.C. § 1681 *et seq.*, which is also known as the Fair Credit Reporting Act ("FCRA").

4.      Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(1) and (2) and Local Rule 3.1(B)(1)(a) and (3).

<u>Factual Background</u>

5.      On February 4, 2023, Plaintiffs David and Hunter Leffler purchased three Yamaha all-terrain vehicles (the "ATVs") from Mountain Motorsports in Buford, Georgia.

6.      Plaintiffs financed their purchase of the ATVs with loans from three different lenders: Sheffield Financial, Synchrony Bank, and Roadrunner Financial (collectively, the "Lenders").

7.      At the time they purchased the ATVs, Plaintiffs (i) purchased "street legal kits" for the ATVs, which included turn signals, side mirrors and other accessories that would allow the ATVs to be operated on public roads and (ii) asked that Mountain Motorsports install the street legal kits on the ATVs.

8.      The purchase price of the street legal kits and labor to install them was to be rolled into the loans that Plaintiffs received from the Lenders.

9. On February 18, 2023, Plaintiffs took delivery of the ATVs from Mountain Motorsports.

10. In January 2024, Plaintiff Hunter Leffler applied for a loan with the Local Government Federal Credit Union ("LGFCU") in Franklin, North Carolina.

11. In connection with Hunter Leffler's loan application, the Loan Officer at LGFCU, Ms. Marion Bluxom, obtained a copy of Hunter Leffler's credit report.

12. After reviewing Hunter Leffler's credit report, Ms. Bluxom informed Hunter Leffler that he had a derogatory credit card account on his credit report that was having a significant, negative impact on his credit score. The derogatory account was purportedly with Defendant.

13. That information came as a complete surprise to Hunter Leffler. He promptly notified his father, Plaintiff David Leffler, of the situation, and Plaintiffs obtained copies of their credit reports.

14. After reviewing their credit reports, Plaintiffs learned that Defendant had furnished information to Equifax and Trans Union stating that Plaintiffs each had a credit card account with Defendant, that those accounts had never been paid and that those accounts had a charged off balance of over $5,700.

15. The information that Defendant furnished to Equifax and Trans Union regarding Plaintiffs was derogatory and inaccurate.

16.     Plaintiffs never applied for accounts with Defendant, never opened accounts with Defendant and never had accounts with Defendant.  Furthermore, Defendant never sent Plaintiffs account statements indicating that Defendant believed Plaintiffs had accounts with Defendant.

17.     Thereafter, Plaintiffs called Defendant and requested an explanation for the inaccurate and derogatory information that Defendant had placed on their credit reports.  Defendant's representative informed Plaintiffs that she could not find any records of the accounts that appeared on their credit reports.

18.     In an effort to correct the inaccurate and derogatory information that Defendant had furnished to Equifax and Trans Union, Plaintiffs exercised their rights under 15 U.S.C. §§ 1681i(a) and 1681s-2(b) by disputing that information with Equifax and Trans Union (the "Disputes").

19.      In compliance with 15 U.S.C. § 1681i(a), Equifax and Trans Union were required to and did provide notice of Plaintiffs' Disputes to Defendant.

20.     Upon receipt of notice of the Disputes from the CRAs, Defendant was required to conduct a reasonable reinvestigation of the Disputes in compliance with 15 U.S.C. § 1681s-2(b).

21.     Defendant failed to conduct a reasonable reinvestigation of the Disputes by *inter alia*, (a) failing to determine whether Plaintiffs had applied for credit card accounts with Defendant, (b) failing to determine whether Plaintiffs

had signed any account agreements or card member agreements with Defendant,
(c) failing to determine whether Defendant had ever communicated with Plaintiffs
regarding their alleged accounts, (d) failing to communicate with personnel at
Mountain Motorsports regarding this matter and (e) failing to consult Defendants'
own internal records, which showed that Defendant told Plaintiffs that it had no
record of their accounts.

22.     Following Defendant's negligent and/or willful failure to conduct
reasonable reinvestigations of the Disputes, Defendant informed Equifax and
Trans Union that the information it had furnished to them regarding Plaintiffs was
accurate.

23.     Thus, inaccurate and derogatory information remained on Plaintiffs'
Equifax and Trans Union consumer reports.

24.     As a proximate result thereof, Plaintiffs have suffered actual damages,
including but not limited to credit denials by American Express and emotional
distress such as humiliation and embarrassment, frustration, and anxiety over
their inability to obtain additional credit.

### Count 1 – Violation of 15 U.S.C. § 1681s-2(b) by Defendant

25.     Defendant negligently, or in the alternative recklessly and/or
willfully, violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable
reinvestigations of the Disputes as alleged in Paragraph 21 above.

26.     As a proximate result thereof, Plaintiffs have suffered and are entitled to recover actual damages as alleged in Paragraph 24 above in an amount to be proven at trial as allowed by 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1).

27.     As a result of Defendant's reckless and willful violations of 15 U.S.C. § 1681s-2(b), Plaintiffs are entitled to recover statutory damages in the amount of $1,000 as allowed by 15 U.S.C. § 1681n(a)(1)(A).

28.     As a result of Defendant's reckless and willful violations of 15 U.S.C. § 1681s-2(b), Plaintiffs are also entitled to recover punitive damages as allowed by 15 U.S.C. § 1681n(a)(2).

29.     Plaintiffs are also entitled to recover their costs of this action and reasonable attorneys fees as allowed by 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2).

WHEREFORE, Plaintiffs respectfully pray that the Court:

1.     Issue process to Defendant;

2.     Conduct a trial by jury of all claims asserted herein;

3.     Enter judgment in favor of Plaintiffs as consistent with the jury's verdict; and,

4.     Grant Plaintiffs such other and further relief as it deems just and necessary.

This 22nd day of October, 2024.

**MCRAE BERTSCHI & COLE LLC**
1872 Independence Square, Suite D
Dunwoody, Georgia 30338

/s/ Craig E. Bertschi
Craig E. Bertschi
Georgia Bar No. 055739
ceb@mcraebertschi.com
678.999.1102

Charles J. Cole
Georgia Bar No. 176704
cjc@mcraebertschi.com
678.999.1105

*Counsel for Plaintiffs*